Vol. 297]      OCTOBER TERM, 1922.      607

State ex rel. Bigham v. State Board of Embalming.

# THE STATE ex rel. F. J. BIGHAM et al. v. STATE BOARD OF EMBALMING.

## In Banc, April 2, 1923.

1. **EMBALMING: Rules of State Board: Renewal of License: Compliance with Statute.** Although a rule adopted by the State Board of Embalming requiring a fee for a renewal license to be paid by May 1st may be invalid in whole or in part, relator has no basis for a legal complaint if it appears that the board, in refusing to renew his license for failure to pay the fee before May 1st, did not act in conformity with the rule, but did act in conformity with a statute reciting sufficient power and authority to support its action, and by said refusal relator is deprived of no right to which he is entitled under the law.

2. ———— **Expiration of License: Renewal: Statute.** The statute required every registered embalmer, if he desired to continue to practice his profession, to make application for a renewal license and pay a fee of three dollars before the expiration of his existing license. Relator's license expired on April 30th and on May 22d he sent to the secretary of the board the required fee. *Held*, that, whether or not the rule of the board requiring the renewal fee to be paid by May 1st was valid, he was not entitled to have his license renewed, and could legally obtain one only by complying with the statute requiring an examination.

3. ———: ———: ———: **Re-examination.** A statutory requirement that a duly licensed embalmer, who has permitted his license to expire, must submit to a re-examination in order to obtain a license authorizing him to continue the practice of his profession, is not oppressive or an unreasonable invasion of an inherent right. The purpose of the statute is to promote sanitation and it is therefore a reasonable police regulation, and the requirement for a re-examination of a registered embalmer who has permitted his license to expire is designated to afford the board an opportunity to test his continued efficiency and competency.

4. ———: **Reasonable Fee.** A fee of ten dollars required of an applicant who desires an embalmer's license, and a fee of three dollars required of a registered embalmer who makes timely application for a renewal of his license, or a fee of ten dollars exacted of a registered embalmer who has permitted his license to expire and must in order to obtain a license submit to a re-examination, is not unreasonable.

5. **REGULATION OF CALLINGS.** No calling, whether professional, commercial or industrial, is invested with such sanctity as exempts it from reasonable legal regulations.

Mandamus.

PEREMPTORY WRIT DENIED.

*Leo H. Johnson* and *M. E. Benton* for relators.

(1.) Relators were registered embalmers in this State to May 1, 1922, under licenses duly issued and renewed by the State. Such licenses constitute "valuable privileges and property rights" of which the holder cannot be deprived without due process of law. 6 R. C. L. 266, sec. 251; People v. Love, 16 A. L. R. 703, 707; State ex rel. Shackleford v. McElhinney, 241 Mo. 592; State ex rel. Spriggs v. Robinson, 253 Mo. 271. Due process of law "means law which hears before it condemns, which proceeds on inquiry and renders judgment only after trial." 12 C. J. 1190. (2) The State Board of Embalming is authorized by statute (Sec. 5302) to adopt "rules and regulations and by-laws from time to time, not inconsistent with the laws of this State or of the United States, whereby the performance of the duties of said board and the practice of embalming of dead bodies shall be regulated." Such authority does not contemplate vesting the power to annul licenses of registered embalmers for failure to pay their renewal license fees within a certain restricted time limit. Further all such rules and regulations are subject to review by the courts to determine whether they are reasonable, unreasonable or discriminatory. 12 R. C. L. 1273, sec. 12; People v. Love, 16 A. L. R. 709. (3) Rule 6 is not a reasonable rule and regulation, but is inconsistent with the laws, in that it attempts to restrict the time of payment to the day on which the renewal fees become due and payable, and upon failure to pay by said date, to exact, as a penalty, the forfeiture of one's license to practice the art of embalming in the State. (4) Sec. 5304 R. S. 1919, as amended by Laws 1921, p. 392, provides: "Every registered embalmer who desires to continue the practice of his profession, shall annually thereafter,

during the time he shall continue in such practice, on such date as said board may determine, pay the secretary of said board a fee of three dollars for the renewal of registration.'' By this section, the board is not authorized to forfeit the license of a registered embalmer. To permit the board to so act, the statute should specifically set forth the causes for which forfeiture might be exacted. The State alone has the power to license, and it alone has the power to forfeit such license, except in those instances where by specific statutory enactment such power is delegated. In such instances the statute should specifically set forth the causes for which forfeitures might be exacted. Green v. Blanchard, 5 A. L. R. 84, 89. Administrative boards do not make laws. They merely make certain findings of facts, and to these findings the law enacted by the Legislature is applied and enforced. 6 R. C. L. 177, 178. (5) ''Penal statutes ought not to be expressed in language so uncertain.'' United States v. Reece, 92 U. S. 214. (a) A court in construing a statute will not create a penalty by construction, but will avoid it, unless the legislative intent to the contrary clearly appears. Nicholas v. Kelly, 139 S. W. 248. (b) The statutes under which respondents acted should be construed strictly against respondents and liberally in favor of relators. State v. Clark, 232 S. W. 1034; In re Seigal, 263 Mo. 383. (c) ''Statutes are not to be construed so as to result in an absurdity or to impose unnecessary burdens, and in the absence of express terms it will not be presumed that the Legislature intended to authorize and require an unreasonable proceeding.'' Johnston v. Ragan, 265 Mo. 435. (6) Public officers cannot revoke licenses duly and lawfully issued by the State, except under express authority of the statute, and then not without notice. Meffert v. Packer, 1 L. R. A. (N. S.) 811; Lodes v. Dept. of Health, 13 L. R. A. (N. S.) 894.

*Frank H. Farris* for respondents.

(1) The State Board of Embalming is a creature of the statute, and derives all of its authority, rights and powers therefrom. The license issued to embalmers and the rights created thereunder, are also creatures of the statute, and, being such, are controlled thereby. R. S. 1919, secs. 5298, 5302, 5305; R. S. 1919, sec. 5303, as amended by Laws 1921, p. 391; R. S. 1919, sec. 5304, as amended by Laws 1921, p. 392. (2) The right to practice the science of embalming as created and provided by the statutes is not a vested nor a property right. It is a mere naked grant of a privilege revocable by the State at any time. State ex rel. v. McIntosh, 205 Mo. 637; State ex rel. v. McIntosh, 205 Mo. 611. (3) The license to embalm confers no right or estate or vested interest, and is therefore revocable at all times at the pleasure of the authority from which it emanates, and a licensee takes his license subject to such condition as the Legislature sees fit to impose. 17 R. C. L. p. 554. (4) Relators having failed to pay their renewal fee for the continuation of their privilege on or before the first day of May, 1922, their right to practice the science of embalming ceased by operation of law. R. S. 1919, sec. 5304, as amended by Laws 1921, p. 392; State ex rel. Wolf v. Dental Board, 221 S. W. 73.

WALKER, J.—Relators prior to April 30, 1922, were licensed undertakers and embalmers engaged in business at Neosho, under the firm name of Bigham Undertaking Company. On May 22, 1922, they sent to the secretary of the State Board of Embalmers a check for six dollars to renew their license which had under the statute expired April 30, 1922. The fee was returned to them by the secretary with the statement that their license had expired May 1st, and a renewal of same required a re-examination and the payment of a fee of $10. Later the secretary notified relators that the board would meet at the Baltimore Hotel in Kansas City, June 26, 1922, "for the benefit of those whose license had been

annulled through failure to renew the same within the time specified by law''; and that a return of their. application filled out and accompanied by a $10 fee would indicate that the relators would attend for examination. The relators notified the secretary that they would not attend and again submit to an examination. To this was added a comment upon rule 6 of the board's regulations and a request that its action be reconsidered and that relators be permitted to pay the renewal fee required upon a timely application therefor. This communication was not answered, and thereafter the board did not recognize the relators as licensed embalmers.

Rule 6 of the regulations of the board is as follows: ''On and after our regular meeting in May, 1917, all renewal fees shall become due and payable on the 1st day of May of each year, without regard to the date of the license and the failure to pay the renewal by May 1st shall act as an annulment of such license, and to procure another license such embalmer shall make written application to the board for a new license, accompany the same with a fee of $10 and present himself or herself for examination at a regular meeting of the board.''

The board is authorized under the fifth subdivision of Section 5302, Revised Statutes 1919: ''To adopt rules, regulations and by-laws from time to time, not inconsistent with the laws of this State or of the United States, whereby the performance of the duties of said board and the practice of embalming of dead human bodies shall be regulated.''

Under Section 5303, Revised Statutes 1919, as amended, Laws 1921, p. 391, it is provided in effect that all persons now engaged or desiring to engage in the practice of embalming dead human bodies shall make a written application to the State Board of Embalming, accompanied by a fee of $10, for a license, and shall present himself or herself before said Board at such time and place as may be fixed for examination, and if it be found that the applicant possesses the requirements prescribed by the statute a license shall be issued.

While the foregoing section does not define the term

for which the license shall be granted this limitation appears in the succeeding Section 5304, Revised Statutes 1919, as amended, Laws 1921, p. 392, as follows: "Every registered embalmer, who desires to continue the practice of his profession, shall annually thereafter, during the time he shall continue in such practice, on such date as said board may determine, pay the secretary of said board a fee of $3 for the renewal of registration."

After five or six years of compliance with rule 6 relators have reached the conclusion, as indicated by their petition, that the board has misinterpreted and misapplied said rule, in that, to employ relators' language, "the board interprets said rule to mean that said renewal license fees become due and payable for the ensuing year on the first day of May each year, and if not paid by that date the license of any embalmer failing to comply is at once annulled and the holder compelled to make application for new license."

Relators' contention is "that the reasonable and correct interpretation of said rule 6 is that said renewal license fees become due and payable on May first of each year, and if not paid by the first of May following, the holder thereof forfeits his license by annulment for failure to pay such fees, and must thereafter make application for a new license, if he wishes to practice the art of embalming in this State."

Whether the foregoing is a correct statement of the board's construction of its rule as well as the construction given to it by the relators must be determined by the facts. Although the rule may be invalid in part or as a whole, if it appears that the board, in this matter, did not act in conformity therewith and the statute under which it did act contains sufficient power and authority to support the board's action, and if by such action relators are deprived of no right to which they are entitled under the law, then the alternative writ must be held to have been improvidently issued and the prayer of the relators denied.

It is conceded that that the relators' license expired

on the 30th day of April, 1922. They were required under the statute (Sec. 5304, supra) to make application for a renewal of same before its expiration. This they did not do. Whether the board formally annulled the license after its expiration is immaterial. It was thereafter, so far as it was able to confer any power upon or invest the relators with any privilege, as inert as the dust "in the tombs of all the Capulets." ' This being true under Section 5303, supra, relators were required to make written application to the board accompanied by the required fee, present themselves before it and if upon examination they were found to possess the qualifications required, they were to be licensed as embalmers. The facts do not show that in any particular the board exceeded these express statutory powers. On the contrary its conduct throughout is characterized as exceedingly fair in affording the relators ample opportunity to renew their license. In what manner, therefore, has any clear legal right of the relators been denied which it was the duty of the respondents to grant? Absent this essential and there is no substantial resting place upon which to base the application for this writ (State ex rel. Kern v. Stone, 269 Mo. 334; Adair Dr. Dist. v. Quincy Ry. Co., 280 Mo. 244; State ex rel. Pub. Service Comm. v. Mo. Pac. Ry. Co., 280 Mo. 456), which has been characterized as a "hard and fast unreasoning writ, reserved for extraordinary emergencies." [State ex rel. v. K. C. Gas Co., 254 Mo. 515.]

It is a mistaken conception of the nature of any calling, professional, commercial or industrial, that it is invested with such sanctity as to exempt it from reasonable legal regulations. The ever-expanding exercise of the police power manifested in the enactment of regulatory statutes, embracing every possible vocation, demonstrates the fallacy of this conception. The purpose of such statutes is in some instances to encourage efficiency and in others to promote sanitation, whereby in the first incompetency may be eliminated and in the second the public health preserved.

However much, therefore, we may decry the growing tendency to increase the number of the boards, commissions and bureaus as promotive of a system of paternalism destructive of individual effort, such legislation is immune from judicial regulation unless the power interferes with the inherent rights of the citizen.

It is not an issue in this case but, in passing, it may be said that the statutes defining the powers of the Embalming Board are not to be thus characterized. A reexamination of one who has permitted his license to expire is not an oppressive requirement or an invasion of an inherent right. It affords the board an opportunity to determine whether under that feeling of security afforded by a license renewable upon a mere application, the applicant has not become inefficient through mental inertia.

The fee required of a first applicant or of one seeking a license after forfeiture, is not unreasonable. It is necessary in the economical administration of public affairs that each department created by law should so far as reasonably possible be authorized to charge such fees for services rendered as will enable the department to be self-sustaining. The fee required in this instance does not accomplish more than this result. Furthermore it is not in excess of fees for like services charged by other departments.

Neither under the issues submitted therefore, or those which might have been submitted had the validity of the statute been questioned, is there any ground for the issuance of this writ and it is denied. All concur.